# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

PATRICIA ODEN,

  Plaintiff,

vs.              CASE NO. CV-08-J-2198-M

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

  Defendant.

## **MEMORANDUM OPINION**

  This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking remand (doc. 9), or in the alternative, reversal and remand (doc. 10) of the final decision of the Commissioner denying the plaintiff benefits. All administrative remedies have been exhausted.

  The plaintiff filed an application for Disability Insurance Benefits on March 24, 2004, alleging a disability onset date of April 6, 2001 (R. 24). The plaintiff was insured through March 31, 2003 (R. 70). The plaintiff alleged an inability to work due to asthma, chronic obstructive pulmonary disease, degenerative disc disease, and emphysema (R. 63). The application was denied initially (R. 27) and again by an Administrative Law Judge ("ALJ") on July 7, 2006 (R. 12-20). The ALJ's

determination became the final decision when the Appeals Council considered additional evidence submitted by the plaintiff, but denied the plaintiff's request for review (R. 5-7).

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the correct legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court has carefully reviewed the entire record in this case and is of the opinion that the Commissioner's decision is supported by substantial evidence, and that the proper legal standards were applied in reaching that decision.

The evidence before the court reveals that the plaintiff had several impairments during the relevant period of April 6, 2001 through March 31, 2003, but no physician in that time period, treating or otherwise, stated that plaintiff was completely unable to work. Further, many of the plaintiff's diagnoses are related to her history of alcohol abuse. On July 4, 2002, plaintiff was admitted to Gadsden Regional Medical Center for a rapid heart rate (R. 407). The plaintiff stated that she has been smoking one pack of cigarettes per day for thirty years and drinking four to six beers every day for six months. *Id.* Frontal view exam of the chest showed mild chronic obstructive pulmonary disease, but no acute cardiopulmonary findings were identified (R. 413). The plaintiff was discharged with instructions to stop all alcohol intake (R. 406). On

November 1, 2002, the plaintiff was admitted for an injury to her shoulder and neck (R. 396). The shoulder exam showed no evidence of any new or acute osseous pathology (R. 402). The plaintiff was discharged with an arm sling and was instructed to wear it for three days (R. 398).

The plaintiff submitted additional medical records to the Appeals Council, including records from Dr. Alberto Echeverri, a treating physician. On August 31, 2006, Dr. Echeverri completed a questionnaire stating that the plaintiff was disabled, and March 1999 was "probably" the plaintiff's disability onset date (R. 454). He stated that her disability was caused by "cirrhosis, severe COPD (Emphysema), Cardiomyopathy, [and] congestive heart failure." *Id.* Dr. Echeverri also treated the plaintiff from May 18, 1995 until March 11, 1999 (R. 107-11). The plaintiff sought regular treatment for a pancreatic pseudocyst (R. 111) and pancreatitis (R. 109). In February 1999, Dr. Echeverri's records note that the plaintiff had been drinking heavily (R. 108). The plaintiff reported passing blood from an upper GI bleed, and Dr. Echeverri informed her that possible diagnoses included gastritis secondary to her alcohol intake and an ulceration. *Id.* Dr. Echeverri recommended a visit to the emergency room physicians, as well as a possible follow-up appointment with a gastroenterologist. *Id.* Although these records refer to a period prior to the relevant period at issue, they show the plaintiff's issues with alcohol going back to at least

1999.

Based upon the record as a whole, the ALJ found that if the plaintiff had stopped abusing alcohol prior to her date of last insured, she "would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))," and she "would have had the residual functional capacity to perform sedentary work" (R. 18). When there is medical evidence of a plaintiff's drug or alcohol addiction, the ALJ must determine whether the plaintiff would still be disabled if she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). If the ALJ finds that the plaintiff's remaining limitations are not disabling, the plaintiff's drug or alcohol addiction becomes a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i). Here, the ALJ properly complied with such regulations, stating that "based upon the documentary and testimonial evidence, if the claimant had stopped her substance use, *as she was advised to*, her medically determinable impairments could reasonably be expected to produce symptoms, but not of a disabling nature" (R. 19) (emphasis added). Although the plaintiff argues that additional records submitted to the Appeals Council warrant remand or reversal and remand to the ALJ, such evidence is not contrary to the ALJ's finding that the plaintiff's symptoms were alcohol induced. On August 31, 2006, Dr. Echeverri

completed a questionnaire stating that the plaintiff was disabled, and March 1999 was "probably" the plaintiff's disability onset date (R. 454). However, a medical record from February 1999 notes that the plaintiff had been drinking heavily (R. 108). The plaintiff reported passing blood from an upper GI bleed, and Dr. Echeverri informed her that possible diagnoses included *gastritis secondary to her alcohol intake* and an ulceration. *Id.* (emphasis added). This supports the ALJ's finding that the plaintiff's alcohol abuse was a material factor regarding her disability.

Other medical records also document the plaintiff's history of alcohol abuse and thus supports the ALJ's conclusion. In February 1997, the plaintiff entered Gadsden Regional Medical Center for alcohol detoxification (R. 275). In May 1997, the plaintiff was admitted to Gadsden Regional Medical Center after being found unresponsive at home due to "a lot of alcohol and Ativan" (R. 291). In February 1999, the plaintiff's discharge diagnoses included alcoholic liver disease and alcohol abuse (R. 295). In May 2000, the plaintiff entered the emergency room due to an overdose of Ambien combined with alcohol (R. 303). Lastly, in September 2003, the plaintiff's discharge diagnosis from the Gadsden Regional Medical Center noted alcohol dependency (R. 309). Again, these records refer to dates other than the relevant period of April 6, 2001 to March 31, 2003. However, they show prior and later alcohol abuse by the plaintiff, and thus support the ALJ's finding that the

plaintiff would not be disabled had she stopped abusing alcohol.

Additionally, Dr. Echeverri's finding that the plaintiff was probably disabled since March of 1999 is not binding on the ALJ. The plaintiff's disability status is the ultimate issue reserved for the ALJ. *See* 20 C.F.R. § 404.1527(e)(1), (3).

Given the evidence presented to the ALJ and this court, the court cannot conclude that the decision of the ALJ was against the weight of the evidence. Accordingly, the decision of the Commissioner must be affirmed.

**DONE** and **ORDERED** this 21st day of April, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE